[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action regarding a dispute over a boundary line in Lebanon affecting 26 acres more or less. The plaintiff, George Pugatch, brings the action for quiet title and to resolve the boundary dispute between his land and that of Marie Bozzi, the defendant.
To resolve the issue both parties put into evidence various deeds and survey maps. Testimony was presented by the plaintiff, his wife, Helen, and his surveyor, Charles Dutch. The defendant's expert Joseph Kirkup also testified.
The area in question is 26 acres between where the plaintiffs propose is the correct line and where the defendant places it.
The defendant's expert, Joseph Kirkup, L.S., stated at trial that the correct boundary line runs north from Old Colchester Road, west of where the plaintiffs place the boundary. In placing the boundary line as such, the defendant's expert Mr. Kirkup CT Page 13226 testified that he relied on objective evidence he had found during his investigation that constituted the only unbroken line of physical evidence to support a boundary between the properties, including:
A. THE TOWN TAX MAP: Lebanon's tax map. Mr. Kirkup testified that the Lebanon Tax Assessor had placed the subject boundary line in essentially the same location as he has. Further, he presented this tax map and indicated to the Court the Assessor's line. Defendant's Exhibit A.
B. A STONE WALL: A stone wall running from Old Colchester Road along a portion of Mr. Kirkup's proposed line. This stone wall predates the plaintiff's family owing the property. Plaintiffs' Exhibit 4 and 6.
C. THE VIRGINIA RAIL FENCE: "Stagger Stones" running along a different portion of the defendant's proposed line. Stagger Stones, according to Mr. Kirkup, are the foundation for Virginia rail fences, which constitute strong evidence of a boundary line due to the difficulty in constructing them. These stagger stones likewise predate the plaintiffs' family owning the property. Plaintiffs' Exhibit 4.
D. THE 1954 DEED: The initial deed of a portion of the plaintiffs' property to the plaintiff Mr. Pugatch from his mother, executed in 1954 and recorded in the Lebanon land records in Volume 68 at page 216. Plaintiffs' Exhibit 3. The eastern most boundary of this 1954 deed runs along a third portion of the defendant's proposed boundary line, further north from the stone wall and Virginia Rail Fence described above.
E. THE FENCE CONSTRUCTED BY THE PLAINTIFFS: A barbed wire fence running the entire course of the defendant's proposed line. The plaintiff Mr. Pugatch testified that his family constructed this fence soon after having purchased the property in 1929, when he was 11 years old.
F. LACK OF EVIDENCE SUPPORTING THE PLAINTIFFS' LINE: The lack of any physical evidence supporting the plaintiffs' proposed line.
Dutch testified that he could not determine where the correct boundary was located. He drew his survey maps based upon what Pugatch's father and his neighbor told him. He reviewed deeds and what he was told but could not support his findings by any CT Page 13227 physical evidence or monuments. As a result, his testimony does not support the plaintiffs' position.
Kirkup testified that his survey is supported by other evidence. The Town's Tax Map shows the boundary line in the same location as he does. He also testified that a stone wall runs along the boundary as he found it as well as the remains of a Virginia Rail Fence consisting of stagger stones, the foundation of the fence. He testified that this line of stones constitutes strong evidence of the boundary line because they are so difficult to construct. He also reviewed the 1954 deed which shows the line to be along the defendant's proposed line north of the stone wall and the remains of the Virginia Stone Fence.
Both argued that in cases of ambiguity contained in the deeds such that surveys must rely on evidence from the field, the area of a parcel is the least reliable in determining boundary lines.
The plaintiff presented evidence of their history on the land.
The Pugatch family moved onto their land in 1929 or 1930, and have occupied the property ever since. The plaintiffs, George and Helen Pugatch, live on the property today.[1]
The plaintiff, George Pugatch, lived on the property from 1929 or 1930 until he entered the military service in 1942, and from 1945 until he married the plaintiff, Helen Pugatch, in 1946. From 1946 through 1970, the plaintiffs lived less than one mile from the family property, and remained directly involved in farming the property. Through most of this period, George came to the family farm on a daily basis, to feed the cattle or tend the Christmas Tree farm on the property. In 1970, the plaintiffs built their current home on the family property.
The plaintiff, Helen Pugatch, grew up on a farm in the area. From 1942 through 1945, while her fiancee and future husband was in the military service, she assisted in operating the Pugatch farm, and she has continued her active involvement during their marriage.
Thus, the plaintiff, George Pugatch, has effectively lived on the subject property for early seventy (70) years, Helen Pugatch for only slightly less. CT Page 13228
Since boyhood, George has known that a portion of the easterly boundary of the farm, the portion of this boundary nearest the road, was marked by a stone wall. This stone wall existed before the family purchased the property in 1929, and the wall (probably a portion of a longer wall) still stands. The stone wall is the easterly side of an enclosed, roughly rectangular area, adjacent to the road, but the existing wall also ends north for approximately twenty (20') feet beyond the enclosed area, as shown in Plaintiff's Exhibit 14. Although the exact boundary line extending north beyond the wall is not marked by any standing monument, a straight line extended from the end of the existing wall to a known point at the corner of the former Amston Lake property, now or more recently owned by George Zocco, yields the correct acreage for both the plaintiffs and the defendant.
Over the years, both plaintiffs had many occasion to go upon and use the area which is now in dispute. Shortly after the property was purchased in 1929, George assisted his father and brothers in erecting the barbed wire fence which extends from the road to another stone wall, which wall marked another corner of the Amston Lake Property. The defendant now claims this barbed wire fence as her boundary line. George testified that this was a fence of convenience, to keep the cows from wandering into the swamp, and not a boundary of the family property. The fence was erected from tree to tree, along the shortest distance across the property, because this was the cheapest and easiest method available to erect the fence, and did not follow any boundary line.
At that time, there was a fence along the easterly boundary of the Amston Lake Property. At an unknown later date, this fence was replaced by a barbed wire fence. This later was constructed using a different, heavier type of barbed wire than the fence erected by the Pugatch family, as shown in Plaintiff's Exhibit 13.
After the Pugatch family erected their fence of convenience, the plaintiffs continued to regularly go upon and use the property east of this fence, the property now claimed by the defendant. As a boy and as an adult, George frequently hunted and set animal traps in this area. In hunting and setting animal traps, it was important for George to know and respect the boundaries of his family's (and later his own) land, as it would be unsafe, illegal and discourteous to hunt or set traps on a CT Page 13229 neighbor's land. While setting traps, hunting or discussing trapping or hunting, George often conversed with his neighbor, Adolf Howard, known to his neighbors as Eddie. Eddie had lived on the abutting farm for all or most of his life and he hunted and set animal traps on his own side of the boundary line. George and Eddie were in complete agreement as to the boundary between their respective family's farms.
Hunting and trapping were not the only uses which the Pugatch family made of the land now in dispute. Although most of the land was not suitable for planting, George, his wife Helen, and George's parents and brothers picked blueberries, mushrooms and greens for Christmas wreaths, and cut wood upon the land which the defendant now claims, all without objection from anyone. Helen Pugatch, on occasion, brought lunch to the men while they were cutting wood on his property.
 Discussion
Both surveyors agreed that this was a difficult survey, and admitted that the easterly boundary of the plaintiffs' property could not be exactly determined. However, Dutch testified that it was reasonable to extend the line of the stone wall to the known point at the corner of the former Amston Lake Property. This line yields the correct arrearage for both parties and is consistent with the credible evidence available, according to the plaintiffs. However, Dutch stated that he could not determine the disputed lines correct location, or could he agree with the plaintiffs' placement of the boundary line.
The court finds that the testimony of the plaintiffs as to their beliefs of where the line is from deeds and conversations with the plaintiff's deceased father and neighbor is not persuasive.
The court also finds that there was no evidence that the stones, barbed wire fence and the Virginia Rail Fence support the position of the plaintiffs.
As in the case Steinman v. Marie, 179 Conn. 574 (1980), the court finds that the plaintiffs' evidence deficient. Old deeds as a rule are not reliable. The court stated that as a rule, "the designation of unsurveyed acreage contained in old deeds is quite unreliable." Id., 576. CT Page 13230
Applying Steinman to this case, the court finds the plaintiffs' simple comparison of acreage in the respective deeds to that in the field and Dutch's sketch showing where the plaintiffs place the boundary, without agreeing that this location is correct, do not satisfy the plaintiffs' burden of proof.
In contrast, the court finds that Kirkup's location of the disputed line is based upon physical evidence in the field and documentary evidence, namely the tax assessor's map and the 1954 deed. He used the stone wall, the stagger stones and the barbed wire fence to support his conclusions. The assessor's map and the 1954 deed supported his conclusions. The court agrees that the defendant's evidence, physical and documentary supports her position.
Accordingly, the court enters judgment in favor of the defendant and holds that the boundary is to lie as set forth in plaintiffs' Exhibit 4.
D. Michael Hurley, Judge Trial Referee